UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JACQUELINE GRAHAM,

Defendant.

16-CR-00786-2 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Defendant Jacqueline Graham ("Defendant") was charged, in a one count indictment, with conspiring to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 ("Count One"). (ECF No. 2.) Along with several co-conspirators, Defendant, as a partner and operator of an entity identified as the Terra Foundation ("Terra"), was accused of, from at least 2011 to at least 2012, engaging in a scheme to defraud clients, banks, and county clerks' offices, and conspiring to commit the underlying offenses of mail fraud, wire fraud, bank fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344. (*Id.*) On June 12, 2019, following a jury trial, Defendant was convicted on Count One.

Now before the Court is Defendant's post-trial motion, pursuant to Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure, for an order setting aside the jury's verdict and entering an order of acquittal, or in the alternative, granting a new trial. (ECF No. 212.) For the following reasons, Defendant's motion is DENIED in its entirety.



# LEGAL STANDARD

## I. Rule 29 Motion

Rule 29 provides that after the close of the Government's evidence in a criminal trial, the Court "on a defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Specifically, a court "will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing *United States v. Reyes*, 302 F.3d 48, 52 (2d Cir.2002)).

This standard imposes a heavy burden on the defendant. Indeed, a court must affirm a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Put differently, a court will grant a motion for judgment of acquittal *only if* "the evidence that the defendant committed the crime alleged [was] 'nonexistent or [] meager.'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).

When assessing the sufficiency of the evidence, the Court must view the evidence in the light most favorable to the government and draw all reasonable inferences in its favor. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir.1991). The Court must consider direct evidence, as well as any circumstantial evidence proffered. *See United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995) (citing *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993)). In so doing, the Court must view the evidence in its totality, not in isolation, and note that the government is not required to negate every possible theory of a defendant's innocence. *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir.1993). Most importantly, the Court must be mindful not to

"usurp[e] the role of the jury," *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (citing *Jackson*, 335 F.3d at 180), or "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.* (citing *Guadagna*, 183 F.3d at 129) (internal quotations omitted).

## II.  Rule 33 Motion

Under Rule 33, "the court may vacate any judgment and order a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  Courts typically grant Rule 33 motions "only in extraordinary circumstances." *United States v. Moore*, 54 F.3d 92, 99 (2d Cir. 1995); *accord United States v. Torres*, 128 F.3d 38, 48 (2d Cir.1997).  "The defendant bears the burden of proving that [he or she] is entitled to a new trial." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

While Rule 33 "confers broad discretion upon a trial court," the Court's granting of the motion must be predicated upon the need to avoid a perceived miscarriage of justice. *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).  The Court must "examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).  Still, it is axiomatic that the Court "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir. 1982).

Only in exceptional circumstances may the Court intrude upon the jury function of credibility assessments. *See United States v. Canova*, 412 F.3d 331, 348-49 (2d Cir. 2005).  For example, where testimony constitutes perjury, *see Sanchez*, 969 F.2d at 1413-14, or is "patently incredible or defies physical realities," the Court may reject such evidence despite the jury's evaluation, *see Ferguson*, 246 F.3d at 133 (quoting *Sanchez*, 969 F.2d at 1414).  Nevertheless, a

court's "rejection of trial testimony, by itself does not automatically permit Rule 33 relief." *Id.*; *see also Sanchez*, 969 F.2d at 1413-14 ("Even in a case where perjury clearly has been identified, however, we have indicated our reluctance to approve the granting of a new trial unless we can say that the jury probably would have acquitted in the absence of the false testimony."). The "ultimate test" for the Court's consideration is "whether letting a guilty verdict stand would be a manifest injustice [such that] . . . an innocent person may have been convicted." *Ferguson*, 246 F.3d at 133 (citation and quotation marks omitted); *see also United States v. Aponte-Vega*, 230 F.3d 522, 525 (2d Cir. 2000) (per curiam) (explaining that new trial "is merited only if . . . the evidence is such that it would probably lead to an acquittal" (internal quotations omitted)).

## DISCUSSION

In her motion, Defendant raises three separate bases for acquittal, or alternatively, a new trial. *First*, Defendant argues that there was no evidence at trial that established her "knowing involvement in the conspiracy" or "purposeful behavior" to further it. (Def. Brief in Support of Her Motion to Dismiss ("Def. Mot."), ECF No. 213, at 5-9.) *Second*, Defendant contends that there was no evidence at trial that established she had the specific intent to commit wire, mail, or bank fraud, or otherwise contemplated harming Terra's victims. (*Id.* at 9-10.) *Finally*, Defendant maintains that the Court erred in instructing the jury that it could rely on a finding of conscious avoidance to decide whether she knew that the specific objective or goal of the conspiracy was to engage in mail fraud, wire fraud, or bank fraud. (*Id.* at 10-11.)

Upon viewing the evidence in the light most favorable to the Government, and considering the totality of the evidence, the Court concludes that the Government has proffered sufficient evidence for each of the requisite elements of Count One. Accordingly, a rational trier of fact

4

could determine beyond a reasonable doubt that the Defendant conspired to commit mail fraud, wire fraud, and bank fraud.

## I. Participation in Conspiracy

Defendant maintains that there was no evidence establishing purposeful behavior or knowing involvement pursuant to a conspiracy to commit wire, mail, or bank fraud. (*Id.* at 9.) In response, the Government points to several pieces of evidence and testimony that it argues establishes Defendant's "'knowing participation' in the conspiracy." (Gov't Br. in Opposition to Def. Mot. ("Gov't Opp."), ECF No. 214, at 6-7.) The Court agrees.

At trial, the Government proffered a "Real Estate Administrative Procedure" PowerPoint presentation authored by Defendant. (GX-109; GX-109-A; *see also* Trial Tr. at 472 (confirming that Defendant was the author of the Real Estate Administrative Procedure presentation).) In that presentation, Defendant provided a detailed account of how Terra's clients could discharge their mortgages in a "non-Judicial way . . . [b]ased on the laws that pertain to our great country." (GX-109-A.) The presentation provided a step-by-step summary of Terra's "REAP Procedure," which included the use of "Qualified Written Request[s] [] demanding response[s] to dispute[s]" and "[i]nstant Foreclosure challenge[s]" that purportedly allowed clients to "get[] judgment[s] against the Bank" and, in turn, satisfy/discharge their mortgage obligations. (*Id.*) The Government also submitted a handwritten letter, dated April 18, 2014, in which Defendant provided an account of how she, along with "John Ruzza, Bruce Lewis, Rocco Cermele, [and] Anthony Vigna," used Terra to conduct "illegal activity." (GX-1.) According to her letter, this scheme involved "fraudulent mortgage discharges, preparation + filings, UCC documents, [and] preparation of client trust documents for fraudulent use," among other things. (*Id.*) Defendant also made it clear that she continued to "accept money" even after "becoming aware" of her partners' "fraudulent

5

acts." (*Id.*) These pieces of evidence, viewed with the totality of the evidence adduced at trial, support a conclusion by a rationale trier of fact that Defendant knew of, participated in, and was aware of the profits to be gained from, Terra's mortgage-discharge scheme.

Witness testimony corroborated much of what the Government's evidence established. For example, Rocco Cermele ("Cermele"), Director of Operations at Terra, testified that it was Defendant who had "devise[d] [Terra's] administrative process." (Trial Tr. at 474, 544.) He also explained that Defendant had been the Terra partner responsible for "prepar[ing] [Qualified Written Requests]" and "draft[ing] the mechanic liens documents" that Terra used to advance its scheme. (*Id.* at 478.) Similarly, Paula Guadagno, another former Terra employee, testified that where there were issues getting county clerks to accept mortgage discharge papers, she was eventually instructed by Cermele to "go to [Defendant ]." (*Id.* at 318-19.) Guadagno explained that she believed Defendant could "overrule" her co-partners—such as Bruce Lewis—in deciding what language to include in these documents so as to maximize the probability that the county clerks would accept them. (*Id.* at 319-20.) As Guadagno further testified, Defendant eventually offered to "edit [the documents] to make [them] work."[1] (*Id.* at 320.) A rationale jury could conclude that these witnesses' testimony established that Defendant's awareness of the scheme at hand and willingness to actively ensure its success.

The above notwithstanding, Defendant contends that the witness testimony establishing her knowing involvement in the Terra scheme was "self-serving, inconsistent and saddled with such duplicity." (Def. Mot. 9.) However, it is, as Defendant concedes, the role of the jury to make

---

[1] Guadagno went on to explain that Defendant ultimately did not help her to fix the language used in these mortgage-discharge documents. (Trial Tr. at 321.) Guadagno testified that she eventually just submitted the documents as originally drafted—which were ultimately accepted by the county clerks—and explained to "Bruce and Jackie [*i.e.*, Defendant]" that the original language in the discharge documents could not be changed. (*Id.*)

6

credibility determinations. (*Id.*) Given that this Court cannot "substitute its own determination of the credibility of witnesses," *see United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984), and as Defendant points to no exceptional circumstances warranting divergence, the Court declines to upend the jury's credibility assessments.

In sum, construing the above in a light most favorable to the Government, the Court concludes that, viewed "in totality," there was sufficient evidence and testimony for a "rationale trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The Court further concludes that it would not be manifest injustice to allow the jury's verdict stand based on this evidence.

## II. Intent to Cause Financial or Property Loss

Defendant argues that the evidence at trial was insufficient to establish her specific intent to cause the financial or property loss of Terra's victims. (Defs. Mot. 10.) The Government, however, points to several key pieces of evidence and testimony adduced at trial that establish Defendants' intent. (Gov't Opp. 7-9.)

As an initial matter, Cermele testified that, among other things, Defendant effectuated the payment plan that Terra's clients were to follow, including the types of fees that the company would charge them. (Trial Tr. at 491.) Further, Cermele maintained that Defendant pushed for clients to "pay[] up front for their audits" before Terra would begin to work on purportedly discharging their loans. (*Id.* at 494, 548.) When it came time to collect and distribute funds, Defendant, as Cermele's testimony and related documents established, had input over how the funds would be disbursed within the company. (*Id.* at 549-51; GX-200.)

At trial, Terra's client victims corroborated Cermele's testimony. For example, Sherry Hopple ("Hopple") testified that Defendant actively held herself out as a "mortgage specialist."

7

(*Id.* at 36.) Defendant then used that position of "expertise" to convince Hopple to "not make [] mortgage payment[s]" and instead "pay [Terra's] fees for processing paperwork" to "help" Hopple resolve her mortgage issues. (*Id.* at 37.) Indeed, even after Defendant had established a "personal" relationship with her, Hopple testified that Defendant continued to instruct her to pay for services such as "filing[s]" or "forensic audits" related to the fraudulent mortgage discharges. (*Id.* at 38, 51.) Faced with this testimony and other supporting evidence, a rational jury could have reached the same conclusion that Cermele's testimony supported: Defendant's conduct revealed a specific intent to profit, to the detriment of the client victims, from Terra's mortgage-discharge scheme.

Finally, there was considerable documentary evidence offered by the Government that established Defendant's knowledge of Terra's fraudulent transactions and thus supported an inference that she intended to collect funds in furtherance of the company's scheme. For example, the Government submitted several Terra bank account summaries, which listed Defendant as a "General Manager" of Terra and showed that she had "signature authority" for the company. (GX-403-A; GX-403-B; GX-404-A; GX-404-B; GX-405-A; GX-405-B; GX-406.) From these documents, a rationale jury could have found that Defendant had access and control over the bank accounts that were used to collect funds from Terra's victims.

In addition to these bank accounts, the Government submitted email records that demonstrated how Defendant personally collected fund after convincing victims, like Hopple, to pay for Terra's scheme. Those emails revealed that Defendant claimed Terra's administrative process would purportedly "make [the victims'] lender[s] literally walk away and sign title over." (GX-702-E.) Thereafter, Defendant would accept payments—amounting to thousands of dollars—to effectuate this scheme. (GX-410; GX-702-D.) This evidence, particularly when viewed in the totality of all evidence and testimony adduced at trial, plainly contradicts

Defendant's contention that there was "no evidence" that Defendant had the specific intent to "deprive either the lenders or home-owners of 'money or property'" (*see* Def. Mot. 10).

Overall, a jury considering the above-referenced testimony and evidence, as well as the evidence establishing the goals of Terra's scheme, could have reasonably concluded that Defendant had the requisite intent to cause financial loss that is necessary to support her conviction. *See Guadagna*, 183 F.3d at 130 ("[A] jury may bring to its analysis of intent on individual counts all the circumstantial evidence it has received on the scheme and the purpose of the scheme in which the defendant allegedly participated."). The Court therefore rejects Defendant's challenge to the sufficiency of the evidence. Nor does the Court conclude that it would be manifest injustice to allow the jury's verdict stand based on this evidence.

## III. The Court's Conscious Avoidance Instruction

Finally, Defendant maintains that this Court erred in "charging [] the jury on 'conscious avoidance' on the sole conspiracy count." (Def. Mot. 11.) In support, Defendant points to Second Circuit authority explaining that conscious avoidance cannot be used to establish intent to enter into a conspiracy. (*Id.* at 10-11 (citing *United States v. Mankani*, 738 F.2d 538, 547 n.1 (2d Cir. 1984).) This, however, does not accurately reflect the substance of this Court's instructions.

As Defendant is aware, the Court instructed the jury that it may "rely on a finding of conscious avoidance to decide whether [Defendant] knew that the specific objective or goal of that agreement was to engage in mail fraud, wire fraud, and/or bank fraud." (Trial Tr. at 872.) But, as the Government points out, the Court expressly made clear that "conscious avoidance [could not] be used as a substitute for finding that [Defendant] knowingly agreed to a joint undertaking." (*Id.*) This is plainly in line with the Second Circuit's directive that conscious avoidance "may be used to support a finding with respect to [knowledge of the unlawful aims and objectives of the

9

conspiracy]." *United States v. Ferrarini*, 219 F.3d 145, 155 (2d Cir. 2000); *accord United States v. Svoboda*, 347 F.3d 471, 479 (2d Cir. 2003) ("Whether the conspiracy is among two members or more, a defendant's conscious avoidance of knowledge of its illegal purpose may substitute for knowledge of the illegal purpose."). Because the Court instructed the jury that it must conclude that Defendant knowingly participated in the charged Terra conspiracy and only could rely on conscious avoidance to establish knowledge of the unlawful objectives of that scheme (consistent with Second Circuit law), the Court finds no basis for a judgment of acquittal or a new trial.

## CONCLUSION

For the foregoing reasons, Defendants' Motion pursuant to Rule 29 and Rule 33 to set aside the jury verdict and issue a trial court order of dismissal, or in the alternative order a new trial, is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 212. Sentencing is scheduled for September 20, 2019 at 11:30 am.

Dated: Sept. 4, 2019
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge